IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Dale Williams,<br><br>    Petitioner,<br><br>vs.<br><br>Dora Schriro, *et al.*,<br><br>    Respondents. | No. CV 06-3058-PHX-PGR (JCG)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the court is a Petition for Writ of Habeas Corpus brought pursuant to Title 28, United States Code, Section 2254. Pursuant to the Rules of Practice of this Court, this matter was initially referred to Magistrate Judge Pyle, then re-assigned to Magistrate Judge Guerin, for Report and Recommendation. (Doc. Nos. 2 & 29.) Before the Court are the Petition for Writ of Habeas Corpus ("Petition") (Doc. No. 1), Respondents' Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. No. 14) and Petitioner's Reply. (Doc. No. 27.) The Magistrate Judge recommends that the District Court deny the Petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case, as summarized by the Arizona Court of Appeals [1], are as follows: Petitioner and his wife were foster parents to numerous children from approximately 1974 and 1997. (Answer, Ex. A.) During that same period of time, they raised four biological children

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct."

and adopted seven other children. (*Id.*) In 1996, the couple began experiencing difficulties in their marriage; they separated in 1997 and each petitioned for divorce. (*Id.*) In March, 1998, one of the couples' adopted daughters reported that Petitioner had sexually molested her. (*Id.*) Four of Petitioner's other female charges eventually came forward with similar allegations. (*Id.*)

Based upon these allegations, Petitioner was charged with fourteen counts, including indecent exposure and multiple counts of sexual abuse, molestation of a child, and sexual conduct with a minor. (*Id.*) Prior to trial, the court granted the state's motion to dismiss as time-barred a single count of molestation of a child involving Petitioner's biological daughter, Patti. (*Id.*) The trial court denied Petitioner's motion to dismiss on a similar basis two counts involving an adopted daughter, Holly, and two of the five counts involving a foster child, Melinda. (*Id.*)

A trial initiated in June, 2000 ended in a mistrial when the jurors could not reach verdicts on any of the remaining thirteen counts. A second trial took place in September, 2000, at which each of the victims – except Holly, who was found unavailable to testify – testified in person. The jury convicted Petitioner on eight counts; the trial court subsequently dismissed without prejudice the five counts on which the jury had been unable to reach verdicts. Prior to sentencing, Petitioner moved for a new trial, arguing that the trial court had erred in finding Holly unavailable to testify. (*Id.*) On June 12, 2001, the trial court denied the motion and sentenced Petitioner to aggravated, consecutive terms of imprisonment

Petitioner appealed his conviction to the Arizona Court of Appeals, raising five claims: (1) the trial court erred in "concealing not-guilty verdicts" on counts three and four involving daughter Melinda; (2) the trial court erred in finding Holly unavailable to testify pursuant to Rule 804, Ariz. R. Evid.; (3) the guilty verdict on count seven involving Melinda was not supported by substantial evidence; (4) the trial court abused its discretion in failing to dismiss as time-barred two of the counts involving Melinda, and (5) the trial court abused its discretion in admitting "other act" evidence pursuant to Ariz. R. Evid. 404(c). (Answer, Ex. A.) The Court of Appeals affirmed Petitioner's convictions and sentences on August 13, 2002. (*Id.*)

Petitioner sought review by the Arizona Supreme Court; that court denied review on January 7, 2003. (Answer, Ex. B.)

On March 12, 2003, Petitioner filed a notice of post-conviction relief pursuant to Rule 32, Ariz. R. Crim. P. (Answer, Ex. C.) Petitioner filed his petition for post-conviction relief on September 15, 2003 ("Rule 32 Petition"). (Answer, Ex. D.) In his Rule 32 Petition, Petitioner raised five claims of ineffective assistance of counsel: (1) trial counsel failed to interview all of the State's witnesses; (2) trial counsel failed to call certain defense witnesses; (3) trial counsel failed to object to the State's introduction of uncharged bad acts; (4) trial counsel failed to object to the absentia testimony of Holly, and (5) trial counsel failed to properly cross-examine the State's expert and failed to present a defense expert with a "pyscho-sexual" history of Defendant. (*Id.*) The trial court summarily denied the first and second claims and found Petitioner's third and fourth claims procedurally barred. (Answer, Ex. E.) With respect to Petitioner's fifth claim, the trial court held a 2-day evidentiary hearing before denying the claim on the merits. (*Id.*)

On September 13, 2004, Petitioner sought review by the Arizona Court of Appeals. (Answer, Ex. H.) In his petition for review, Petitioner presented one claim: Petitioner received ineffective assistance of counsel when trial counsel failed to properly cross-examine the State's expert and failed to present a defense expert with a "pyscho-sexual" history of Defendant.[2] (*Id.*)

---

[2] Respondents argue that Petitioner presented a second claim in his petition for review – a claim that Petitioner's trial counsel was ineffective for failing to challenge the admissibility of the state's expert's testimony. (Answer, pg. 5.) The Court disagrees with Respondents' reading of the petition. Petitioner's petition for review includes a single sentence on this topic: "had [trial counsel] properly researched the pertinent Arizona case law, he would have discovered that Mr. Emerick's testimony should not have been admitted in the first place." (Answer, Ex. H, p. 17.) The Court does not construe this sentence in the petition, which was drafted by counsel, as a free-standing claim of ineffective assistance of counsel for purposes of federal habeas review. *See Kelly v. Small*, 315 F.3d 1063, 1069 (9th Cir. 2003) ("A thorough description of the operative facts before the highest state court is a necessary prerequisite to satisfaction of the standard of *O'Sullivan* and *Harless* that a federal habeas petitioner must provide the state courts with a fair opportunity to apply controlling legal precedent to the facts bearing upon his constitutional claim.") Petitioner's sole statement regarding the claim is summarily asserted in an argument regarding harmless error at the end of the petition for review; it is not included or discussed in the numerous pages of argument asserting Petitioner's challenges to the expert's testimony and it is no where developed in a manner which would fairly present the state court

The Court of Appeals summarily denied review on July 21, 2005. (Answer, Ex. J.) Petitioner sought review by the Arizona Supreme Court; that court denied review without comment on April 20, 2006. (Answer, Ex. K.)

On December 12, 2006, Petitioner, represented by counsel, filed a federal habeas petition, in which he raises five claims:

**Ground 1:** Petitioner's Sixth Amendment right to confront witnesses was violated when the trial court admitted Holly's testimony without a sufficient showing of her unavailability;

**Ground 2:** Petitioner's Fifth and Fourteenth Amendment rights to a fair trial was violated when the trial court admitted prior bad act evidence;

**Ground 3:** Petitioner's due process rights were violated when the trial court erred in refusing to dismiss certain counts as being outside the statute of limitations;

**Ground 4:**[3] Petitioner received ineffective assistance of counsel when trial counsel (a) failed to preserve the testimony of Jeffrey Williams, (b) failed to object to the admission of Holly's prior testimony, (c) failed to object to the admission of other acts evidence and (d) failed to effectively cross-examine the state's expert and failed to present a defense expert with a "pyscho-sexual" history of Defendant;[4] and

---

with notice that the claim was being asserted. (See Answer, Ex. H, pp. 4-13.)

[3] Respondents construed Grounds 4(a)-(d) as examples of ineffective assistance of counsel supporting a claim of cumulative error, rather than separate, free-standing claims of ineffective assistance of counsel. In his Reply, Petitioner suggests that he agrees with Respondents' characterization of his ineffective assistance counsel claim, but then briefs each alleged incident of ineffective assistance of counsel individually. Petitioner's Petition does not clearly state whether Petitioner intends to allege only a cumulative error claim or also intends to allege separate ineffective assistance of counsel claims arising from each factual example provided. (Petition, pg. 7.) Furthermore, Petitioner's Rule 32 Petition alleged numerous ineffective assistance of counsel claims similar to those presented in the federal petition. Accordingly, out of an abundance of caution, the Court considers Grounds 4(a)-(d) as separate claims, distinct from Petitioner's cumulative error claim (which the Court addresses as Ground 5). *See Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (treating distinct failures by trial counsel as separate claims for exhaustion and procedural default).

[4] In two separate paragraphs, Petitioner argues that the trial court unreasonably applied *Wiggins v. Smith*, 539 U.S. 510 (2003) in considering Petitioner's ineffective assistance of counsel claims arising from trial counsel's tactical decisions regarding the state's expert. The Court regards this argument as

- 4 -

1  **Ground 5:** The cumulative errors of Petitioner's trial counsel, combined with the closeness of the evidence, deprived Petitioner of his right to effective assistance of counsel.

## DISCUSSION

**A.    Exhaustion**

Ordinarily, before a federal court will consider the merits of a habeas petition, the petitioner must exhaust the remedies available to him in state court. 28 U.S.C. §2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971). First enunciated in *Ex parte Royall*, 117 U.S. 241 (1886), the exhaustion requirement is designed "not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The requirement is grounded in principles of comity, and reflects a desire to protect state courts' role in the enforcement of federal law. *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (citation omitted). The requirement is also based on a pragmatic consideration that fully exhausted claims will usually be accompanied by a complete factual record once they reach federal court. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

A petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. *See Rose v. Lundy*, 455 U.S. 509, 519 (1982). A petitioner must have also presented his claim in a procedural context in which its merits will be considered. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). A habeas petitioner's claims may be precluded from federal review on exhaustion grounds in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Second, the claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the

---

a part of Ground 4(d), not a free-standing claim.

- 5 -

exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1. If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

### i.     Petitioner has not exhausted Ground 1

To properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim is "fairly presented" if the petitioner has described the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). Resolving whether a petitioner has fairly presented his claim to the state court is an intrinsically federal issue to be determined by the federal court. *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995); *Harris v. Champion*, 15 F.3d 1538, 1556 (10th Cir. 1994). Commenting on the importance of fair presentation, the United States Supreme Court has stated:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). Following *Duncan*, the Ninth Circuit has held that a state prisoner has not "fairly presented" (and thus has not exhausted) federal claims in state court unless he specifically indicated to that court that the claims were based on federal law. *See, e.g., Lyons v. Crawford*, 232 F.3d 666, 669-70 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked  specificity and explicitness required to present federal claim).

In Ground 1, Petitioner alleges that his Sixth Amendment right to confront witnesses was violated when the trial court admitted Holly's testimony without a sufficient showing of her unavailability. In his direct appeal, Petitioner alleged facts which form the basis of Ground 1, but presented those allegations in support of a claim arising under state law, and the Court of Appeals considered the claim as a state law claim.[5] (Answer, Ex. A, pg. 9.) Petitioner argues in his Reply that he "federalized" his claim by citing to *State v. Medina*, 178 Ariz. 570, 577 (1994), in which the Arizona Supreme Court refers generally to "the confrontation clause." This citation is insufficient for purposes of federal exhaustion. *See Shumway v. Payne*, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal claim); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion."). Accordingly, Ground 1 was not fairly presented. Because Ground 1 was not fairly presented in state court, it remains unexhausted absent a showing of cause and prejudice or a fundamental miscarriage of justice.

### ii.  Petitioner has not exhausted Ground 2

In Ground 2, Petitioner claims that his Fifth and Fourteenth Amendment rights to a fair trial was violated when the trial court admitted prior bad act evidence. Petitioner presented the factual basis for Ground 2 in his direct appeal, but presented those allegations in support of a claim arising under state evidentiary rules, and the Court of Appeals considered the claim as a state law evidentiary claim. (Answer, Ex. A, pgs. 15-16.) Accordingly, Ground 2 was not fairly presented and remains unexhausted absent a showing of cause and prejudice or a fundamental miscarriage of justice.

### iii.  Petitioner has failed to exhaust Ground 3

In Ground 3, Petitioner claims that his due process rights were violated when the trial court erred in refusing to dismiss certain counts as being outside the statute of limitations. In

---

[5] A copy of Petitioner's direct appeal was not included in the record by either Petitioner or Respondents. Thus the Court relied on the Court of Appeals opinion for a summary of the claims raised by Petitioner on direct appeal.

their Answer, Respondents argue that Petitioner presented this claim in his appeal as a state law claim, the Arizona Court of Appeals denied it on state-law grounds, and therefore the claim was not fairly presented. Petitioner did not respond to Respondents' fair presentation argument in his Reply, and therefore appears to concede this claim. Regardless, the Court agrees with Respondents' analysis. (Answer, Ex. A, pgs. 13-15.) Because Ground 3 was not fairly presented in state court, it remains unexhausted absent a showing of cause and prejudice or a fundamental miscarriage of justice.

### iv. Petitioner failed to exhaust Grounds 4(a), 4(b) and 4(c) but has properly exhausted Ground 4(d)

In Ground 4, Petitioner alleges that he received ineffective assistance of counsel when trial counsel (a) failed to preserve the testimony of Jeffrey Williams, (b) failed to object to the admission of Holly's prior testimony, (c) failed to object to the admission of other acts evidence and (d) failed to effectively cross-examine the state's expert and failed to present a defense expert with a "pyscho-sexual" history of Defendant. Petitioner did not present Ground 4(a) in his direct appeal or in his post-conviction proceedings. Petitioner presented Grounds 4(b) and 4(c) in his Rule 32 Petition, but did not present them when he sought review by the Arizona Court of Appeals. Consequently, Petitioner has not fairly presented Grounds 4(a), 4(b) or 4(c) and cannot raise those claims for the first time in federal court. *See Rose*, 455 U.S. at 519 (stating that a petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254). Petitioner is now precluded by Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.4 from obtaining relief on Grounds 4(a), 4(b) or 4(c) in state court absent an applicable exception, which Petitioner does not assert. *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Thus, Grounds 4(a), 4(b) or 4(c) are technically exhausted but procedurally defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice.

Petitioner properly presented Ground 4(d) in both his Rule 32 Petition and his petition for review by the Arizona Court of Appeals. Accordingly, the Court will consider Ground 4(d) on the merits.

### v.     Petitioner has failed to exhaust Ground 5

In Ground 5, Petitioner alleges that the cumulative errors of Petitioner's trial counsel, combined with the closeness of the evidence, deprived Petitioner of his right to effective assistance of counsel. Petitioner concedes that he did not present this claim in his state court proceedings. Petitioner argues, however, that he was not required to exhaust Ground 5 because Arizona courts do not recognize the cumulative error doctrine, and therefore it would have been futile for Petitioner to raise the claim in the state courts. This argument is without merit. Regardless of whether Arizona courts recognize the cumulative error doctrine with respect to ineffective assistance of counsel claims arising under *state* law, in post-conviction relief proceedings Arizona courts will consider an cumulative error/ineffective assistance of counsel claim arising under the *federal* Constitution. Whether a claim exists at state law does not relieve Petitioner of his obligation to fairly present his *federal* claim in the state court and exhaust it before raising the claim in federal court. *See Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (treating distinct failures by trial counsel as separate claims for exhaustion and procedural default); *Matias v. Oshiro*, 683 F.2d 318, 319-20 & n.1 (9th Cir. 1982) (finding no fair presentation of eight grounds of ineffectiveness of counsel not raised in state court); *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994) (raising specific claims of ineffectiveness of counsel in state court does not exhaust all such claims for federal habeas review); *cf. Strickland v. Washington*, 466 U.S. 668, 690 (1984) (requiring identification of the specific "acts or omissions" of counsel and a determination of whether those acts are outside the range of

competent assistance).[6] Accordingly, Ground 5 is procedurally defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice

### vi.     Petitioner has not demonstrated cause and prejudice

Petitioner is now precluded by Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.4 from obtaining relief on Grounds 1, 2, 3, 4(a), 4(b), 4(c) and 5 in state court absent an applicable exception under Rules 32.2(b) and 32.1(d)-(h), Ariz. R. Crim. P., which he does not assert. Therefore, Grounds 1, 2, 3, 4(a), 4(b), 4(c) and 5 are technically exhausted but procedurally defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (citations omitted; internal quotation marks omitted); *Thomas v. Goldsmith*, 979 F.2d 746, 749 (9th Cir. 1992). Petitioner does not allege either cause and prejudice or a fundamental miscarriage of justice to overcome the default. Therefore, the Magistrate Judge recommends that Grounds 1, 2, 3, 4(a), 4(b), 4(c) and 5 be dismissed as procedurally barred.

## B.  Merits

### i.     Standard of Review

On habeas review, a state court's findings of fact are entitled to a presumption of correctness when fairly supported by the record. *Wainwright v. Witt*, 469 U.S. 412, 426 (1985). The presumption of correctness also applies to a state appellate court's findings of fact. *Sumner v. Mata*, 449 U.S. 539, 546 (1981). The question presented in a state prisoner's petition for a

---

[6] Notably the Arizona Court of Appeals recognized its obligation to consider federal cumulative error/ineffective assistance of counsel claims in *State v. Holden*, 2008 WL 4559872 (Ariz. App. Div. 2, 2008): "Controlling jurisprudence likewise requires that we consider any claims of ineffective assistance of counsel, raised under the Sixth Amendment to the United States Constitution, cumulatively. *See Strickland v. Washington*, 466 U.S. 668, 694, 105 S.Ct. 2052, 2068 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (emphasis added); *see also Harris v. Wood*, 64 F.3d 1432, 1438 (9th Cir.1995) (in ineffective assistance of counsel context, " 'prejudice may result from the cumulative impact of multiple deficiencies' "), quoting *Copper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir.1978)."

writ of habeas corpus is "whether the state proceedings satisfied due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991).

Federal courts may entertain a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *Reed v. Farley*, 512 U.S. 339 (1994). General improprieties occurring in state proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated the petitioner's Fourteenth Amendment right to due process. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."); *Bonin*, 77 F.3d at 1158. The Supreme Court has held in the habeas context that "this Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). The provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) govern this case and pose special burdens. *Chein v. Shumsky,* 373 F.3d 978, 983 (9th Cir.2004) (en banc). Under AEDPA, when reviewing a state criminal conviction, a federal court may grant a writ of habeas corpus only if a state court proceeding: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or "if the state court confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but "nevertheless arrives at a result different from" that precedent. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle" from a Supreme Court decision "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. In considering whether a state court has

- 11 -

1  unreasonably applied Supreme Court precedent, "a federal habeas court may not issue the writ
2  simply because that court concludes in its independent judgment that the relevant state-court
3  decision applied clearly established federal law erroneously or incorrectly. Rather, that
4  application must also be unreasonable." *Id.* at 411; *Bell v. Cone,* 535 U.S. 685, 694 (2002). In
5  conducting habeas review, we "presum[e] that state courts know and follow the law." *Woodford*
6  *v. Visciotti,* 537 U.S. 19, 24 (2002).

### ii.    *Strickland* standard

In Ground 4(d), Petitioner alleges that he received ineffective assistance of counsel because trial counsel failed to effectively cross-examine the state's expert and failed to present a defense expert with a "pyscho-sexual" history of Defendant. Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), the leading United States Supreme Court case governing claims of ineffective assistance of counsel, the Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. at 686. The burden of proof on Petitioner to show ineffective assistance is two-pronged. First, Petitioner must show that counsel's performance was deficient, in that counsel made errors so serious that counsel was not functioning as "counsel." *Strickland*, 466 U.S. at 687. In demonstrating a deficient performance, Petitioner must show that the representation fell below an objective standard of reasonableness. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, since there is a "strong presumption that counsel's performance falls within the "wide range of professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. 689).

Second, in proving ineffectiveness, Petitioner must show that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 692. To prove prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's errors and omissions, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

Mere conclusory allegations are insufficient to prove that counsel was ineffective. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989). A habeas petitioner is entitled to an

1 evidentiary hearing or habeas relief when "he has alleged facts [in his petition] which, if proven,
2 would entitle him to relief. . . . Notice pleading is not sufficient, for the petition is expected to
3 state facts that point to a real possibility of constitutional error." *O'Bremski v. Maass*, 915 F.2d
4 418, 420 (9th Cir. 1990) (quotations omitted).

In order to be entitled to relief on Ground 4(d), Petitioner must demonstrate that the state court's decision was based on a legal standard contrary to the *Strickland* standard, or was based on an unreasonable determination of the facts in light of the evidence presented.

### iii. Petitioner's claim that he received ineffective assistance of counsel is without merit

In considering the ineffective assistance of counsel claims raised in Petitioner's Rule 32 petition, the law applied by the trial court[7] was consistent with the *Strickland* standard. The trial court examined whether counsel's actions were reasonable and whether Defendant was harmed by counsel's alleged ineffectiveness. (Answer, Ex. E, pgs. 2-3; Ex. G, pg. 52.) The court also cited to *Wiggins v. Smith*, 539 U.S. 510 (2003), in which the United States Supreme Court reaffirms the *Strickland* standard. *Id*. at 521. Because the trial court applied the correct legal standard under *Strickland*, Petitioner is not entitled to habeas relief unless he can demonstrate that the trial court's application of the facts to that legal standard was unreasonable.

Petitioner claims that the trial court unreasonably applied *Wiggins* when it determined that trial counsel effectively cross-examined the State's expert witness. The Court disagrees. The State called Mr. Robert Emerick to testify during trial. In his Rule 32 Petition, Petitioner argued that Mr. Emerick testified regarding the "generalized profile of a child molester," and that trial counsel should have challenged the reliability of the profile presented by Mr. Emerick on cross-examination.[8] (Reply, pg. 19; Answer, Ex. E.) In considering Petitioner's Rule 32 Petition, the trial court held that "Mr. Emerick's testimony addressed some very broad

---

[7] When applying the AEDPA and reviewing whether a state court decision is contrary to federal law, this court must look to the state's last reasoned decision as the basis for its judgment. *Avila v. Galaza*, 297 F.3d 911, 918 & n. 6 (9th Cir.2002).

[8] To the extent that Petitioner argues in his Petition and Reply that trial counsel should have objected to the testimony of Mr. Emerick, that claim was not presented in his Rule 32 Petition and is not exhausted.

- 13 -

generalities about sex offenders and some common misconceptions about sex offenders," but his testimony was not a "profile" within the legal sense of the word. (Answer, Ex. E.) The trial court concluded that because Mr. Emerick did not offer profile testimony, trial counsel did not have a duty to investigate further to challenge the reliability of the testimony on cross-examination. (*Id.*)

The trial court's ruling was a reasonable application of the facts to the *Strickland* standard. In *Wiggins*, the Court considered whether the investigation supporting counsel's decision not to introduce mitigating evidence of the defendant's background was reasonable under *Strickland*. *See Wiggins*, 539 U.S. at 523. The court noted that limitations on investigation must be supported by reasonable professional judgment. *See id.* at 533.

Under Arizona law, profile testimony is testimony which describes the "informal compilation of characteristics" or an "abstract of characteristics" typically displayed by a category of persons. *State v. Lee*, 959 P.2d 799, 801 (Ariz. 1998). Courts generally exclude profile testimony because the "use of profile evidence to indicate guilt ... creates too high a risk that a defendant will be convicted not for what he did but for what others are doing." *Id.* at 802. Mr. Emerick's testimony, as summarized by the trial court,[9] did not constitute profile testimony. Mr. Emerick testified that sex offenders usually are not strangers to the victims and that sex offenders can have both normal sexual interests and deviant sexual interests at the same time. (Answer, Ex. E.) Mr. Emerick also testified that sex offenders can have an interest in girls, or boys, or both. (*Id.*) Thus, Mr. Emerick's testimony regarding sex offenders was extremely generalized – it did not constitute a compilation of specific characteristics, and it did not describe characteristics that were particularly similar to the aspects of Petitioner's life.

There is ample evidence in the record to support a finding that trial counsel investigated the anticipated testimony of Mr. Emerick, concluded that it did not constitute profile testimony and formulated his cross-examination strategy accordingly. Trial counsel testified that he knew that any expert called by the state should be prohibited from offering propensity evidence or

---

[9] Neither party provided a transcript of Mr. Emerick's testimony.

- 14 -

testifying as to the guilt or innocence of the defendant. (Answer, Ex. F, pg. 12.) Trial counsel interviewed Mr. Emerick before trial and Mr. Emerick testified at Petitioner's first trial (which ended in a mistrial). (Answer, Ex. F, pgs. 12, 74-75.) Trial counsel had retained Mr. Emerick as an expert in other cases. (Answer, Ex. F., pg. 13.) Based on these experiences, trial counsel believed that any testimony Mr. Emerick could offer would be so general that it would help Petitioner's defense because it would suggest that anyone could be a pedophile, and trial counsel developed that point during cross-examination. (Answer, Ex. F, pgs. 15-16.) Because trial counsel's tactical decisions regarding his investigation and cross-examination of Mr. Emerick were supported by reasonable professional judgment, they do not constitute deficient performance under *Wiggins*.

Petitioner further argues that trial counsel was ineffective in failing to retain a counter expert to testify to Defendant's "psycho-sexual" history. Specifically, Petitioner argued that trial counsel should have called Dr. Martig to testify. (Answer, Ex. D, pgs. 13-14.) According to Petitioner, Dr. Martig is a clinical psychologist who evaluated Petitioner after he was convicted and sentenced. (*Id*., pg. 14.) Dr. Martig opined that Petitioner "does not have deviant sexual preferences ... does not have prior sexual offenses, and ... does not have problems in regard to a personality disorder." (*Id*.) Dr. Martig therefore concluded that Petitioner was "not a true pedophile." (Answer, Ex. E.) The trial court rejected Petitioner's argument. First, the trial court noted that Petitioner might have been permitted to admit into evidence testimony demonstrating that certain characteristics commonly found in child molesters were not found in Petitioner. However, the trial court reasoned that Dr. Martig was not prepared to offer such testimony. Instead, Dr. Martig would testify only that Petitioner was not a "true pedophile." Dr. Martig would also testify that seven out of ten adults who molest children are not "true pedophiles." Thus, Dr. Martig's testimony would not have assisted the jury in determining whether Petitioner molested the victims in this case. The trial court further concluded that any testimony from Dr. Martig that Defendant was unlikely to commit incest would have been inadmissible. Accordingly, the trial court concluded that trial counsel was not deficient in failing to call Dr. Martig as a witness. (Answer, Ex. E.)

1    The trial court reasonably applied the *Wiggins* standard when it rejected Petitioner's claim. As the trial court correctly noted, Dr. Martig's testimony that Petitioner was not a "true pedophile" would not assist the jury in determining whether Petitioner had committed sexual crimes against the victims, particularly given Dr. Martig's testimony that seven out of ten adults who molest children are *not* "true pedophiles." Thus, trial counsel was not deficient in failing to introduce such testimony. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to take futile action can never be deficient performance). Furthermore, in *State v. Lindsey*, 720 P.2d 73, 76 (Ariz. 1986), the Arizona Supreme Court held that:

> ...even where expert testimony on behavioral characteristics that affect credibility or accuracy of observation is allowed, experts should not be allowed to give their opinion of the accuracy, reliability or credibility of a particular witness in the case being tried. Nor should such experts be allowed to give opinions with respect to the accuracy, reliability or truthfulness of witnesses of the type under consideration. Nor should experts be allowed to give similar opinion testimony, such as their belief of guilt or innocence. The law does not permit expert testimony on how the jury should decide the case.

Pursuant to *Lindsey*, Dr. Martig would have been prohibited from offering the type of testimony that Petitioner argues he should have been called to offer: that people like Petitioner don't molest their children. Trial counsel testified during the Rule 32 evidentiary hearing that, based on his experience and research, he did not believe that an expert could be called to testify as to whether Petitioner lacked the classical markers for sexual deviance, and he would not have called a psycho-sexual expert to testify because such testimony would not have been helpful. (Answer, Ex. F, pg. 13, 21, 28-29.) Trial counsel's investigation resulted in a tactical decision that was reasonable in light of the governing legal standard. Accordingly, trial counsel's decision not to call Dr. Martig as a witness did not constitute ineffective assistance of counsel under *Wiggins*. Furthermore, because the jury would not have benefitted from Dr. Martig's testimony and/or the testimony would have been inadmissible, there is not a reasonable probability that, if Petitioner's trial counsel had called Dr. Martig as an expert, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 692. Accordingly, the Court concludes that Ground 4(d) is without merit.

## **RECOMMENDATION**

1  Based on the foregoing, the Magistrate Judge recommends that the District Court enter
2  an order DENYING the Petition for Writ of Habeas Corpus.
3  Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within
4  ten days of being served with a copy of the Report and Recommendation. If objections are not
5  timely filed, they may be deemed waived. If objections are filed, the parties should use the
6  following case number: **CV 06-3058-PHX-PGR**
7  The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner and
8  counsel for Respondents.
9  DATED this 26th day of November, 2008.

_____
Jennifer C. Guerin
United States Magistrate Judge